UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES RAYMOND,

    Plaintiff,

    v.

THOR MOTOR COACH INC,

    Defendant.

Case No. 3:21-CV-222 JD

## <u>OPINION AND ORDER</u>

Charles Raymond purchased an RV subject to a limited warranty issued by its manufacturer, Thor Motor Coach. Mr. Raymond discovered a number of defects, and he brought the RV to an authorized dealer for service under the limited warranty twice. Dissatisfied with the RV, Mr. Raymond brought this suit. The amended complaint lists five claims: one each for breach of express and implied warranties under California's Song-Beverly Act, the same with regard to the Federal Magnuson-Moss Act, and a claim for breach of express warranty for Thor's other representations outside the written warranty. The Court finds Mr. Raymond's Song-Beverly claims fail because the purchase did not take place in California for the purposes of the Act, his Magnuson-Moss claims fail because he did not give Thor a reasonable opportunity to cure or avail himself of the back-up remedy, or in the alternative, because he was not in privity with Thor, and his separate breach of warranty claim fails because he has neither provided evidence of any relevant representation by Thor nor showed he received any such representation. Accordingly, the Court grants Thor's motion for summary judgment on all claims.

### A. Facts

The following facts are presented in the light most favorable to the non-moving party. On January 25, 2020, plaintiff Charles Raymond purchased a new 2019 Thor Outlaw 37GP RV from Day Brothers Auto and RV Sales in London, Kentucky. At the time, Mr. Raymond lived in California. Prior to visiting Kentucky, he became interested in the RV and spoke with members of the Day Brothers staff on the phone, but he had not decided for certain that he would purchase an RV during his Kentucky trip. (DE 56-2 at 50; 54). Once in Kentucky, Mr. Raymond met with Day Brother's staff, examined the RV, made his down payment, and signed the relevant purchase agreement and several other agreements related to the RV. Mr. Raymond also received a copy of the limited warranty covering the RV, which was issued by Thor. Among the extraneous agreements, two describe the delivery date as January 25, 2020, and one describes the vehicle as delivered on that date despite acknowledging that the RV was physically located on the dealer's lot in Kentucky. The total cost with financing of the RV was $244,956.00.

Mr. Raymond decided he would like to have the RV shipped to his home in California. Two days after executing the purchase agreement with Mr. Raymond, Day Brothers engaged a third party, Horizon Transport, to transport the vehicle. Day Brothers did not charge extra for this service. The shipping cost, $3,601.40, was rolled into the financed cost of the RV at a cost of $3,500, and Day Brothers did not charge Mr. Raymond for the balance. The vehicle was transported to California and arrived on February 2, 2020.

Mr. Raymond experienced problems with the RV and sought repairs from two authorized dealers as prescribed in the limited warranty. The defects addressed in the first visit were minor: chipped paint, misaligned doors, and bowing shelves. The second dealer visit repaired several new scratches but did not indicate a second attempt to repair any of the previously repaired

defects. Mr. Raymond has not sought any additional attempts to repair the problems with the RV. Prior to either of the dealer repair attempts, Mr. Raymond called a mobile mechanic to assist him in retracting the RV's slide. It is not clear whether Mr. Raymond was reimbursed by Thor for this expense. The slide issue was addressed in the first dealer visit and did not appear on the report of the second dealer visit. Prior to filing this suit, the parties engaged in mediation, but could not come to a resolution. Though Mr. Raymond claims his RV's defects remain unrepaired, his only evidence for this contention is the fact that he brought the instant lawsuit, and his submitted evidence indicates that all but two of the defects submitted for repair were repaired. (DE 59-2 at 17; DE 59-1 at 5–10.)

### B.  Legal Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id*. at 255.  Even if the facts are undisputed, summary judgment will not be entered unless the facts show the movant is entitled to judgment as a matter of law. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 602 (7th Cir. 2015).

## C. Discussion

Each of Mr. Raymond's five claims fail as a matter of law. Summary judgment is appropriate on his Song-Beverly Act claims because the purchase did not take place "in California" for the purpose of that statue. Summary judgment is also appropriate on his Magnuson-Moss claims because he did not give Thor a reasonable opportunity to cure or avail himself of the back-up remedy as required under Indiana law. Even if the limited warranty's choice of law provision did not control the implied warranty claim, that claim would still fail because a proper choice of law analysis results in the application of Kentucky law, which requires privity. Finally, Mr. Raymond's breach of express warranty alone claim fails because he has not provided the Court with any representations capable of constituting an express warranty as he alleged. Therefore, the Court will enter summary judgment on all counts.

### *(1) Song-Beverly*

Mr. Raymond brings two claims under the Song-Beverly Act, a California consumer protection statute. *See* Cal. Civ. Code §§ 1792 *et seq*. In order for the protections of the Song-Beverly Act to apply, the RV must have been purchased in California. *See Cummins, Inc. v. Superior Ct.*, 115 P.3d 98, 106 (Cal. 2005) ("[T]he structure and language of the existing statutory provisions indicate that the Legislature intended the Act to apply only to vehicles sold in California.")[1] A good is sold in California where title to the goods passes in California.

---

[1] Mr. Raymond argues that the parties' stipulation to transfer also includes a stipulation agreeing to the application of the Song-Beverly Act to the plaintiff's claims. Thor disagrees and notes the stipulation reads, "Song Beverly Consumer Warranty act will apply to Plaintiff's claims as pled in his complaint *if this court or a court in Indiana allows plaintiff to pursue them*." The text of the stipulation does not reflect an agreement to liability under the Song-Beverly Act, and such a stipulation would be improper. *See Bernstein v. Bankert*, 733 F.3d 190, 218 n.18 (7th Cir. 2012) ("There is no question that the parties cannot agree upon the law and force a conclusion according to their understanding or agreement.")

*California State Elecs. Assn. v. Zeos Internat. Ltd*., 41 Cal. App. 4th 1270, 1276–77 (1996). For this particular case, where title passed depends on whether the parties had a shipment contract or a delivery contract. In a shipment contract, title to the goods passes to the buyer at the time and place of the shipment; in contrast, in a delivery contract, title passes to the buyer upon tender of the goods at the destination. It is not relevant to the inquiry that the vehicle was ultimately transported to California; either kind of contract could produce this result. *Frengel v. McLaren Auto., Inc*., No. 3:22-CV-0664 W (RBB), 2022 WL 17491176, at *3, --- F.Supp.3d --- (S.D. Cal. Dec. 7, 2022). If the parties had a delivery contract, the purchase may be said to have taken place in California and the Song-Beverly Act would apply, but if it was a shipment contract, the purchase would not have taken place in California. *Id.*

To determine if the sales contract was a shipping or delivery contract, the Court begins by reviewing the contract's terms; if they are not ambiguous, no extrinsic evidence is needed. *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1114 (C.D. Cal. 2007). California law presumes a shipment contract unless the parties contract otherwise. *Gaynor v. W. Rec. Vehicles, Inc.*, 473 F. Supp. 2d 1060, 1064 (C.D. Cal. 2007). The parties agree the sales contract alone is the relevant contract, and other agreements executed at the same time constitute extrinsic evidence. The Court has reviewed the terms of the contract of sale and finds they are not ambiguous, and they do not explicitly assert a delivery contract. The body of the main contract of sale is silent as to the time of transfer of title. It is also entirely silent on terms or conditions of delivery. Silence on both of these issues implies that the contract is a shipment contract under California's rebuttable presumption, and title passed at the dealership. *See id*. at 1062. As a result, Mr. Raymond's purchase would not be eligible for the protection of the Song-Beverly Act.

In response, Mr. Raymond argues that because the sales contract included the total purchase price (and delivery must have necessarily been included in that price because the seller paid for delivery), then the sale was conditional upon delivery, and the contract must have been a delivery contract. This argument is convoluted and without support in the precedent. First, it is not dispositive that the shipping price was rolled into the total purchase price because a shipping contract may require the seller to ship the product without becoming a delivery contract. *Carlson v. Monaco Coach Corp.*, 486 F. Supp. 2d 1127, 1131 (E.D. Cal. 2007). The analysis is about who is the owner of the product while it is in transit, not whether the product was moved. And second, when considering whether a contract was conditional upon delivery, a court looks at the terms of the agreement: do they specifically require the seller to make delivery at the destination? *See Zeos*, 41 Cal. App. 4th at 1277. If they do not, the Court does not hunt about for other terms that could possibly imply a delivery contract if one squints.

Mr. Raymond also argues that if the Court were to consider extrinsic evidence, it would see that the tax documents specify that the final delivery would be to California. But consideration of extrinsic evidence is unnecessary because the contract is not ambiguous, and even if the Court were to consider it, the accompanying extrinsic evidence makes Mr. Raymond's case worse, not better. First, the final resting place of the goods for tax purposes has no bearing on whether the contract is a shipment or delivery contract. *Gaynor v. W. Recreational Vehicles, Inc.,* 473 F. Supp. 2d 1060, 1064 (C.D. Cal. 2007) (rejecting argument that allowing delivery out of California to avoid sales taxes and affording protections of Song-Beverly allowed the buyer to "have his cake and eat it too"). And second, the full picture of extraneous agreements underscores that the transaction was completed and delivery for legal purposes tendered before the vehicle was physically transported. One such extraneous agreement, the

Bank of America Delivery Receipt and Storage Agreement ("BofA Agreement"), signed on the day of purchase, provides "*Buyer has accepted delivery and possession* of the following described recreational vehicle… which secures that certain retail installment contract and security agreement executed by Buyer in favor of Bank of America, N.A. ("Bank"). *The Collateral is located on the premises of the Dealer, whose physical address is [street address], London, KY.*" So, in the plain language of the BofA Agreement, the buyer accepted delivery and possession for purposes of the loan and security agreement while the RV was still sitting on the dealership lot in Kentucky. Moreover, the third-party shipping bill of lading ("Horizon Shipping Bill") reflects that an outside contractor shipped the RV and that shipment was ordered two days after the primary agreement and BofA agreement were executed (and delivery was formally accepted for the purposes of the loan). The Horizon Shipping Bill further underscores that this was a shipment contract. *See Gusse*, 470 F. Supp. 2d at 1114 (finding acceptance prior to shipping and third-party shipping consistent with shipping contract). It would be odd, indeed, for the construction of the extrinsic agreements to formally accept legal delivery and possession days prior to even contracting for actual delivery if the tender of the title were conditional upon actual delivery. Accordingly, though the Court was not required to examine extrinsic evidence to determine the meaning of this unambiguous contract, the extrinsic evidence further assures the Court that this was a shipment contract and sale did not take place "in California" for the purposes of the Song-Beverly Act.

As such, Mr. Raymond will not be afforded the protections of the Song-Beverly Act. The Court grants summary judgment in favor of the defendant on Mr. Raymond's first and second claims, which are conditional on application of the Song-Beverly Act.

### *(2)  Magnuson-Moss Claims*

Mr. Raymond also brings breach of express and implied warranty claims under the Magnuson-Moss Warranty Act. The Magnuson-Moss Warranty Act allows consumers to enforce limited written and implied warranties in federal court by borrowing state law causes of action. *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011). The Court begins by addressing the express limited warranty claim and then turns to the implied warranty claim, finding neither are successful.

### *(a)  Express Limited Warranty*

Mr. Raymond argues Thor breached the express limited warranty. As an initial matter, the parties each make much ado about what choice of law should apply, arguing at length about where the transaction was finalized and which state had the most significant contacts. A separate motion to establish the controlling law was also filed. But none of this strenuous arguing was necessary, because, as both sides acknowledge, the limited warranty contains a choice of law provision selecting Indiana for any and all claims arising out of or relating to the warranty. (DE 51 at 12.) This provision gets scant attention in the briefing, but it controls the applicable law for all the remaining claims. *See Merchain v. Thor Motor Coach Inc.*, 577 F. Supp. 3d 886, 890 (N.D. Ind. 2021) (applying identical choice of law provision to select Indiana law as governing law). Therefore, Indiana law will apply.

Mr. Raymond argues Thor's failure to repair the RV constitutes a breach of the express limited warranty. The parties agree Mr. Raymond twice delivered his RV to a dealership for repair, though Thor argues he cannot recover because two opportunities to repair does not constitute a reasonable opportunity to repair and because he did not exhaust the back-up remedy,

which requires him to seek reimbursable repair at an independent mechanic or damages from

Thor prior to suing. Mr. Raymond argues that his earlier call to a mobile mechanic constitutes

availing himself of the back-up remedy, that Indiana law did not require Mr. Raymond to avail

himself of the back-up remedy and that Thor had a reasonable opportunity to repair the vehicle

under Indiana law. Mr. Raymond's argument is unavailing; he was required to avail himself of

the back-up remedy, and two chances to perform repairs is not a reasonable opportunity to cure a

defect as a matter of law.

To evaluate whether a breach occurred, the Court first turns to the terms of warranty. *See*

*Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992)

("A manufacturer's liability for breach of an express warranty derives from, and is measured by,

the terms of that warranty"). The terms of the warranty in question limit the buyer's remedies.

Under Indiana law, parties may contract to limit their remedies. *Kenworth of Indianapolis, Inc. v.*

*Seventy-Seven Ltd.,* 134 N.E.3d 370, 379 (Ind. 2019)*.* A named remedy is presumed to be in

addition to the standard remedies unless it is excusive, in which case, it is the sole remedy. *Id*.

Here, the language is clear: both the first and back-up remedy are sole and exclusive remedies.

Therefore, a plaintiff would only have a cause of action if the remedies failed of their essential

purposes by depriving him of the substantial value of his bargain. *Id*. at 404. The limitation of

remedy provisions read:

> TMC's sole and exclusive obligation is to repair any covered defects discovered
> within the warranty coverage period if: (1) within ten (10) days of your discovery
> of a defect you notify TMC or an authorized dealership of the defect; (2) AND you
> deliver your motorhome to TMC or an authorized dealership (at your expense).
>
> BACK UP REMEDY
>
> If the primary repair remedy fails to successfully cure any defect after a reasonable
> number of repair attempts, your sole and exclusive remedy shall be to have TMC
> pay an independent service shop of your choice to perform repairs to the defect OR

if the defect is incurable, have TMC pay diminished value damages. The repair remedy and the back-up remedy MUST both be exhausted AND these remedies must fail to fulfill their essential purpose before you can seek other legal or equitable remedies for breach of this express warranty or for breach of any implied warranty.

As noted in the terms above, the limited remedy (first paragraph) does not fail until it has "fail[ed] to successfully cure any defect *after a reasonable number of repair attempts*" (emphasis added).

To begin with, it is clearly established under Indiana law that two attempts to cure minor defects does not constitute a reasonable opportunity to repair as required by the limited remedy. *Mathews v. REV Recreation Grp., Inc*., 931 F.3d 619, 622 (7th Cir. 2019). It is undisputed that Mr. Raymond only took the RV to an authorized dealer twice to have repairs performed. Further, Mr. Raymond's own exhibit reveals the defects he sought to repair in the second dealership visit were different defects than those addressed in the first. (DE 59-1 at 6–10.) Thor was given the opportunity to repair each defect only one time, and it appears many of the defects were repaired after the single attempt.[2] As a matter of law, a single repair attempt of a minor defect does not constitute a reasonable opportunity to repair as required by both the terms of the limited warranty and Indiana law, and no breach has taken place. *See Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1023 (N.D. Ind. 2020) (granting summary judgment where each RV defect was fixed after first or second opportunity to repair).

---

[2] Mr. Raymond's expert witness report details an inspection of the RV and notes many issues. (DE 59-1 at 10–12.) However, and this is essential, almost none of these defects are the same defects Mr. Raymond previously sought to have repaired. These issues cannot form the basis of the breach because they were never presented for repair. The Court was able to identify only two reoccurring issues: the driver's slide-out needing lubrication and some difficulty with a motorized bed. Though Mr. Raymond experienced reoccurring issues with a leaky washing machine, the washer and dryer are explicitly excluded by the terms of the warranty (DE 56-5 at 2), and therefore this defect cannot constitute the basis of a breach of express warranty claim.

As an illustrative example, Mr. Raymond's own exhibit summarizes one of several defects repaired on the second visit: "Line 4 states that there are scratches behind the passenger side rear wheel. The technician stated that there was transport damage. He stated that he repaired and repainted the scratches. There were no further diagnostics or repairs performed on the vehicle for this concern." The scratches do not appear in Mr. Raymond's expert witness report on his examination of the RV. In fact, for most defects, a fairly minor problem was identified, it was repaired, and no further repair attempt was sought. Mr. Raymond has not provided any evidence that these repairs were unsuccessful, and given his evidence, a reasonable jury could only conclude that most defects were repaired successfully after just one repair attempt. Even for issues that re-appear in the expert report, there is no evidence Mr. Raymond sought repair a second time. Therefore, no breach has occurred.

Facing this clear barrier to recovery, Mr. Raymond argues that the limited warranty failed of its essential purpose because each repair took too long. The Court does not find this persuasive. The RV was out of service for 50 days for the first repairs and 37 days for the second repairs. Even assuming these periods can be added together and the entire period constituted time out of service, these are not the sort of extreme dalliances that courts find to constitute a failure of the limited remedy. *See Zylstra v. DRV, LLC*, 8 F.4th 597, 608–09 (7th Cir.) (102 days out of service not unreasonable). Therefore, the time out of service cannot rescue Mr. Raymond's claims, and no breach of warranty has occurred.

Even if Thor was afforded a reasonable opportunity to repair, Mr. Raymond's claims would still fail because he did not avail himself of the back-up remedy. *See Mathews v. REV Recreation Grp., Inc.,* 931 F.3d 619, 622 (7th Cir. 2019) (applying Indiana law to find the plaintiff did not have a breach of contract claim where he made no effort to avail himself of the

limited remedy). The terms of the remedy limit Mr. Raymond's options: if he cannot successfully have the RV repaired at an authorized dealer, his sole and exclusive remedy is to seek repair from an independent mechanic. Though Mr. Raymond argues that the call to the mobile mechanic constitutes availing himself of the back-up remedy, this argument is not persuasive. Mr. Raymond was to engage an independent mechanic if and only if repair by the authorized dealer failed after a reasonable number of opportunities to repair; other independent repairs do not suffice to meet this condition. The mobile mechanic was engaged prior to seeking warranty assistance from the dealer; in plain English, one might say Mr. Raymond put the cart before the horse. Mr. Raymond's argument also fails because the mobile mechanic addressed only a single issue: retracting the slide. Therefore, his work could not constitute the back-up remedy for the other named defects.

In order to avail himself of the back-up remedy, Mr. Raymond would have been obligated to exhaust the limited remedy, and then have the RV repaired at an independent service shop of his choice, at which point Thor would be obligated to pay for those repairs. But the parties never got to this step; instead, Mr. Raymond leapfrogged over the steps prescribed in the warranty and jumped to litigation after the attempting the limited remedy. This failure to abide by the terms of the contract precludes recovery. *See Martin v. Thor Motor Coach Inc.,* 474 F. Supp. 3d 978, 986 (N.D. Ind. 2020) (availing oneself of the back-up remedy is a condition precedent to filing suit). Accordingly, Mr. Raymond did not avail himself of the back-up remedy, and no breach of the express warranty has occurred.

The Court sympathizes with what was likely an annoying experience under the terms of the RV's written warranty. But the terms of the express warranty explained in some detail the process, and there is no breach when the buyer gets exactly what was promised. *Cf. Shea v. Gen.*

*Motors LLC,* 567 F. Supp. 3d 1011, 1019–20 (N.D. Ind. 2021) (warranty limitation was effective because parties did not bargain for warranty without limitation in question and limitation was not unconscionable); *Reger v. Arizona RV Centers, LLC*, 515 F. Supp. 3d 915, 932 (N.D. Ind. 2021); ("the language of the warranty establishes the obligations and rights of the parties"). The existence of a warranty does not transform any unpleasantness into a cause of legal action; rather, a warranty is only breached when the buyer is not afforded the protections he was promised. *See Perry v. Gulf Stream Coach, Inc.,* 814 N.E.2d 634, 643 (Ind. Ct. App. 2004) (inquiry is whether limited remedy "fails of its essential purpose, not the essential purpose of the U.C.C., contract law, or of equity"); *Sanco, Inc. v. Ford Motor Co*., 771 F.2d 1081, 1084 (7th Cir. 1985) (distinguishing allocation of risks in strict liability action from breach of warranty action). Therefore, Thor has not breached the terms of the express warranty, and the Court grants summary judgment on Mr. Raymond's third claim.

### (b) Implied Warranties

Mr. Raymond's implied warranty claims fail under Indiana or Kentucky law because Thor was not afforded a reasonable opportunity to cure and because the parties were not in privity. Though the Court has performed an analysis under both state's law in an abundance of caution, Mr. Raymond's implied warranty claims cannot prevail in either case.

The parties again argue that an involved intimate contacts analysis must be performed to determine which state's law applies. The terms of the express warranty's choice of law provision read:

> This limited warranty shall be interpreted and construed in accordance with the laws of the state of Indiana. Any and all claims, controversies and causes of action arising out of or relating to this limited warranty, whether sounding [in] contract, tort or statute, shall be governed by the laws of the state of Indiana,

including its statute of limitations, without giving effect to any conflict of law rule
that would result in the application of the laws of a different jurisdiction.

So the question becomes whether the implied warranty claims "arise out of or relate to"
the limited warranty. Where does the implied warranty come from? Does it arise from or relate
to the express limited warranty, or is it some more nebulous thing? Courts in our circuit have
found similar warranties' "arise from or relate to" language "broad and capable of expansive
reach," indicating that implied warranty claims would relate to the express written warranty.
*Housley v. Thor Motor Coach Inc.*, 566 F. Supp. 3d 916, 918 n.1 (N.D. Ind. 2021) (applying
identical choice of law provision to implied warranty claims). The text of the Indiana U.C.C.
provisions creating the implied warranties provides further support; both provisions refer to the
warranty being implied in an express contract for sale. *See* Ind. Code Ann. § 26-1-2-314; § 26-1-
2-315.[3] Assuming the implied warranty arises from or relates to an express agreement, Indiana
law would apply, as the choice of law provision would be given effect to control the claims.
Under Indiana law, Mr. Raymond's implied warranty law claims would fail in the same manner
as his express warranty claims, because he did not give Thor a reasonable opportunity to repair.
*See Mathews v. REV Recreation Grp., Inc.*, 931 F.3d 619, 623 (7th Cir. 2019) (failure to give
reasonable opportunity to repair fatal to implied warranty claims); *Zylstra v. DRV, LLC*, 8 F.4th

---

[3] On the other hand, these provisions explicitly refer to the contract for sale, not the express warranty,
which are different agreements. But Indiana law has already decided privity is not necessary to bring a claim for
breach of the implied warranty of merchantability. *See Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959
(Ind. 2005). And this circuit's precedent has always assumed a manufacturer could be liable under implied
warranties of merchantability despite not being a party to the sales contract. *See, e.g., Anderson v. Gulf Stream
Coach, Inc.*, 662 F.3d 775, 778 (7th Cir. 2011). In addition, precedent interpreting the "arise from and relate to"
language in the context of arbitration provisions found it can transcend one agreement and apply to another
agreement between the parties if the clause is broad enough to encompass the dispute and the agreement containing
the clause incorporates the other by reference. *See Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir.
2012).

597, 609 (7th Cir. 2021) (same). Therefore, the Court would grant summary judgment on Mr. Raymond's implied warranty claims.

Even if the Court erred in finding the choice of law provision applied to the implied warranty claims, Mr. Raymond's claims would still fail because the choice of law analysis in absence of the controlling provision results in applying Kentucky law, which requires privity. Indiana's choice of law rules in contract cases apply the law of the state with the most intimate contacts. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.,* 940 N.E.2d 810, 815 (Ind. 2010). To determine the state with the most significant relationship to the transaction and the parties, and therefore the most intimate contacts, the Court considers five factors: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 7 (Ind. Ct. App. 2009). "If the place of negotiating the contract and place of performance are in the same state, the law of that state will usually be applied." *Reger v. Arizona RV Centers, LLC*, 515 F. Supp. 3d 915, 930 (N.D. Ind. 2021) (finding other state's contacts outweighed those of state where plaintiff resided and RV was repaired). In the course of purchasing the RV, Mr. Raymond began exploring the possibility of the RV purchase on the phone while he was in California and the dealer was in Kentucky. Mr. Raymond then flew to Kentucky to inspect the vehicle, complete the purchase, and sign the necessary agreements. The deal was ultimately negotiated and executed in Kentucky.[4]  The Court also found above that title

---

[4] Though Mr. Raymond argues the deal was negotiated and finalized prior to his travel to Kentucky, his deposition reveals they did not have "any previous agreements of sale price before meeting" and the parties did not discuss delivery of the vehicle prior to his arrival in Kentucky. (DE 56-2 at 50; 54). Mr. Raymond also said, "We didn't even know for sure if we were going to, in fact, make that purchase [of the RV] that day or not." *Id*. at 55. This certainly calls into question how the deal could be finalized with such material terms undefined and without any definite intention to make the purchase.

was transferred in Kentucky. Relevantly, the RV began its journey in Kentucky and was finally delivered to California, and Mr. Raymond is a California resident. Mr. Raymond also twice sought repair for the RV in California. Thor is a Delaware corporation with its principal place of business in Elkhart, Indiana. Considering the totality of these circumstances, the Court finds Kentucky has the most intimate contacts with this litigation in absence of the express choice of law provision.

Mr. Raymond could not prevail on his Magnuson-Moss implied warranty claim under Kentucky law because it requires the parties to an implied warranty be in privity of contract. Privity is the relationship between parties to a contract that allows them to enforce the contract's promises and prevents a third party from doing so, subject to limited exceptions. *Phoenix Am. Administrators, LLC v. Lee*, --- S.W.3d ---, No. 2022-SC-0133-DG, 2023 WL 4037404, at *4 (Ky. June 15, 2023). If the liability is based on the sale of a product, liability cannot extend beyond the buyer-seller relationship unless the U.C.C. or some other exception extends it. *Complex Intern. Co. Ltd. v. Taylor*, 209 S.W.3d 462, 464 (Ky. 2006). Under Kentucky law, privity of contract is an essential element of a claim for a breach of implied warranty. *Bosch v. Bayer Healthcare Pharms., Inc.*, 13 F. Supp. 3d 730, 749 (W.D. Ky. 2014). "As a rule, privity of contract does not extend beyond the buyer-seller setting, and an intervening purchaser destroys privity." *Taylor*, 209 S.W.3d at 465. It is undisputed that Mr. Raymond purchased the RV from a dealer and that the parties were not in a buyer-seller relationship; therefore, no privity of contract was established.

Mr. Raymond argues that he nevertheless may bring his implied breach of warranty claims because he was an intended third-party beneficiary of the warranties. This argument is mistaken. While Kentucky law has recognized a limited exception for third-party beneficiaries to

16

the rule that express warranties require privity, *see Naiser v. Unilever United States, Inc.*, 975 F.Supp.2d 727, 739 (W.D. Ky. 2013), "[t]he Court's ruling in *Naiser* had no impact on the privity of contract requirement with respect to implied warranty causes of action." *Est. of DeMoss by & through DeMoss v. Eli Lilly & Co.*, 234 F. Supp. 3d 873, 882 (W.D. Ky. 2017) (finding plaintiff's breach of implied warranty claim failed because the parties were not in privity); *see also Bosch v. Bayer Healthcare Pharms., Inc.,* 13 F. Supp. 3d 730, 749 (W.D. Ky. 2014) (finding no privity precluded recovery on implied warranty claims, despite manufacturer's actionable express warranties under *Naiser*). Therefore, there is no third-party beneficiary exception to Kentucky's requirement that the parties be in privity of contract in order to have a breach of implied warranty, and Mr. Raymond's breach of implied warranty claim fails.

Mr. Raymond makes several other grasps at establishing privity, including asserting asking the Court to apply the general trend away from privity, finding an agency relationship between Thor and Day Brothers, or applying the doctrine of equitable estoppel. These arguments are unavailing. Mr. Raymond has not applied the facts to the law in support of any of these arguments, nor does he cite relevant precedent that stands for the proposition cited. [5] Accordingly, the Court finds these arguments are waived and summary judgment is proper. *See United States v. Morales*, 572 F. Supp. 3d 502, 508 (N.D. Ill. 2021) (arguments waived where party failed to cite to supporting law or facts).

---

[5] For example, Mr. Raymond cites one Alabama state case, *Ex parte Grand Manor, Inc.*, 778 So. 2d 173 (Ala. 2000), for the proposition that "[e]stoppel precludes a manufacturer from avoiding liability when the manufacturer induces the buyer to proceed with a sale by conveying promises through the dealer to correct defects." (DE 59 at 16.) But this case does not contain the proposition it is cited for: it addresses only tort law claims, deals with privity only in the context of negligence, and the word estoppel does not appear anywhere in the decision. Though the court discusses whether the plaintiff was entitled to rely on the representations, it does so in the context that reliance on a fraudulent statement is an element of promissory fraud, the claim at issue in that case.

### *(3) Fifth Claim for Breach of Express Warranty*

This claim does not rise and fall with the earlier Magnuson-Moss breach of express

warranty claim because it is not duplicative of the third claim: it alleges a breach of different

express warranties. *Cf. Bakopoulos v. Mars Petcare US, Inc.*, 592 F. Supp. 3d 759, 767 (N.D. Ill.

2022) (holding "[t]he federal warranty claims in this case rise and fall with plaintiff's state-law

claims" where the claims were parallel). While the third claim relies on the express written

warranty provided at the time of purchase, Mr. Raymond's fifth claim states:

> At all times herein mentioned, on and prior to January 25, 2020, Thor utilized
> media, professional publications, and salespersons to urge the use and sale of the
> 2019 Thor Outlaw, and expressly warranted to members of the general public,
> including the plaintiff herein, that the 2019 Thor Outlaw and its component parts
> were free from latent defects or inherent risk of failure and were effective, proper
> and safe for their intended usage.

The fact that the allegations of the fifth claim differ from those of the third claim is never

mentioned by either party. Nonetheless, Thor has sought summary judgment on all claims, and

Mr. Raymond has offered no argument or evidence to defend this claim. "[S]ummary judgment

is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that

would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*,

325 F.3d 892, 901 (7th Cir. 2003). When a plaintiff offers no evidence, summary judgment is

appropriate. *Id*. Though the existence of an express warranty is normally a question of fact for

the jury, because Mr. Raymond has not demonstrated a genuine issue of material fact, the Court

may grant summary judgment. *Cf. Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.,* 514

N.E.2d 1299, 1304 (Ind. Ct. App. 1987).

The Court was not provided any evidence of the alleged express warranties at issue in

claim five: no media, professional publications, or sales communications have ever been

submitted. The Court cannot evaluate whether any communications constituted express warranties because the Court does not know what the communications said. Under Indiana law, a communication from a seller is not an express warranty unless: (1) the seller makes an affirmation of fact or promise to the buyer; (2) that relates to the goods; and (3) becomes part of the basis of the bargain between the parties. *Kenworth*, 134 N.E.3d at 377. Not every statement creates an express warranty; some statements are merely puffery or opinion. *Kesling v. Hubler Nissan, Inc.,* 997 N.E.2d 327, 333 (Ind. 2013). But without any information about the nature of the statements, the Court cannot decide whether they are express warranties or mere puffery or opinion. That determination is necessarily concerned with the specifics of the messaging, and the specifics are unknown to the Court. Further, because Mr. Raymond has included no information about the communications or evidence that he reviewed any communications, the Court cannot evaluate whether the communications became the basis of the bargain. "Indiana law requires that, 'in order for the seller's assurances to constitute an express warranty under the statute, the assurance must constitute a promise which was part of the basis of the purchase agreement.'" *Wabash Power Equip., Co. v. BTU State Line, LLC*, No. 2:13-CV-202-TLS, 2015 WL 3884266, at *3 (N.D. Ind. June 24, 2015) (*citing Carpetland U.S.A. v. Payne*, 536 N.E.2d 306, 308 (Ind.Ct.App.1989)). While this requirement does not rise to the level of reliance, the plaintiff must show that the "warranty was entered into the contract as an intended element thereof, and as a part of the consideration for the purchase price." *Carpetland*, 536 N.E.2d at 308 (distinguishing basis of the bargain requirement from requirement that buyer would not have purchased the item but for the warranty). Nothing in Indiana law suggests that an express communication unnoticed by Mr. Raymond could become part of the basis of the bargain, and Mr. Raymond has not provided any evidence of express communications he received. The Court,

therefore, grants summary judgment in favor of Thor on Mr. Raymond's fifth claim for breach of contract.

### (4) Other Matters

As a final matter, Mr. Raymond asks the court to deny the motion, apparently as a sanction for what Mr. Raymond believes to be improper discovery conduct. This argument is underdeveloped, and the Court will not consider it at length. *See Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1063 (7th Cir. 2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived.") The Court notes that Thor's discovery responses were proper, as Mr. Raymond's interrogatories improperly requested the opinions, mental impressions, conclusions, and legal theories of opposing counsel rather than proper factual information. *Cf. State Farm Fire & Cas. Co. v. Nokes*, 263 F.R.D. 518, 523 (N.D. Ind. 2009) (interrogatories may seek factual information but not the work product of attorneys).

Mr. Raymond also challenges opposing counsel's instruction to a corporate deponent not to answer a question about the third-party BofA Agreement because he lacked knowledge. Though counsel's instruction to the deponent was not in accordance with Rule 30(c)(2), the Court finds a sanction of denying summary judgment would not be just in this case because it would be disproportionate. *See* Fed. R. Civ. P. 30(c)(2); *Specht v. Google, Inc.,* 268 F.R.D. 596, 599 (N.D. Ill. 2010) (calling for speculation is not a valid reason under 30(c)(2) to instruct a witness not to answer); *Nelson v. Schultz*, 878 F.3d 236, 239 (7th Cir. 2017) (sanction must be proportionate to violation). A district court need not impose sanctions if the conduct was harmless or substantially justified or if doing so would be unjust. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 959 (N.D. Ill. 2021). Though Mr. Raymond argues

the violation prejudiced his ability to develop his case, the Court is skeptical. Mr. Raymond does not make any arguments based on the BofA Agreement or deposition of Thor's corporate representative at any time in his motion, the BofA Agreement is harmful to Mr. Raymond's case, and the face of the document indicates the third party with relevant knowledge about the document's origins and terms. Given the apparent uselessness of this information to Mr. Raymond's case and his clear ability to obtain information about the BofA Agreement from a party other than Thor, the Court finds the violation was harmless. Therefore, the Court declines to decide summary judgment on this basis.

### IV. Conclusion

For the reasons stated above, the Court GRANTS Thor's motion for summary judgment (DE 54) on all claims. The Court DENIES AS MOOT Mr. Raymond's motion to establish controlling law (DE 53.)

SO ORDERED.

ENTERED: August 2, 2023

_____ /s/ JON E. DEGUILIO _____
Judge
United States District Court